IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARGARET A. MANCHOOK, | CASE NO. 1:23-cv-412 |
| Plaintiff, | DISTRICT JUDGE |
| | BRIDGET MEEHAN BRENNAN |
| vs. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Margaret Manchook filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits and Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In April 2015, Manchook filed an application for Disability Insurance Benefits and Supplemental Security Income alleging a disability onset date of

February 15, 2015,[1] and claiming she was disabled due to bipolar disorder, anxiety, depression, and fibromyalgia. Tr. 745, 747, 785. The Social Security Administration denied Manchook's applications and her motion for reconsideration. Tr. 607–08, 648–49. Manchook then requested a hearing before an Administrative Law Judge (ALJ). Tr. 672.

In July 2017, an ALJ held a hearing, Tr. 523–74, and in December 2017 issued a written decision finding that Manchook was not disabled. Tr. 488–511. Manchook appealed to federal court, and in May 2019, the Court remanded Manchook's case to the Agency for further administrative proceedings. Tr. 3856–57.

In November 2021, a different ALJ held a hearing. Tr. 3816–54. The next month the ALJ issued a written decision finding that Manchook was not disabled. Tr. 3764–99. The ALJ's decision became final on January 3, 2023, when the Social Security Appeals Council declined further review. Tr. 3749–52; *see* 20 C.F.R. § 404.981.

Manchook filed this action on March 1, 2023. Doc. 1. She asserts the following assignment of error:

> Whether the ALJ's RFC finding is supported by substantial evidence in the absence of any mention of Plaintiff's headaches/migraines.

Doc. 7, at 5.

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

**Evidence**

*Personal and vocational evidence*

Manchook was born in 1981 and was 34 years old on her alleged disability onset date. Tr. 745. She attended college for a time and used to work as a nurse assistant, small products assembler, and fast-food worker. Tr. 532, 786, 3797.

*Medical evidence*

In her brief, Manchook doesn't include a "Statement of Facts." Doc 7, at 4. Instead, Manchook wrote that "[t]he relevant hearing testimony, medical evidence, and medical opinions are described in the Supplement filed herewith …. As such, Plaintiff's Supplement will focus on her treatment for [Manchook's medical] condition." *Id*.

The Court's Initial Order states, in relevant part:

> **Plaintiff's Brief on the Merits**
>
> ***
>
> 3. Plaintiff must file his or her primary submission. That filing must be captioned *Plaintiff's Brief on the Merits*.
>
> ***
>
> 5. Plaintiff must also file a supplement to the *Plaintiff's Brief on the Merits*. This supplement will consist of a chart summarizing the evidence in the record that supports its arguments …. *Including evidence in the supplement does not relieve Plaintiff of the obligation, discussed below, to specifically cite all relevant facts in the Facts section of Plaintiff's briefs.*

Doc. 4, at 1–2 (emphasis added). The Court's Initial Order then sets forth the briefing requirements:

### Requirements for Briefs

***

10. *Plaintiff's Brief on the Merits* must first set forth a list of "Legal Issues," followed by a recitation of facts in a "Facts" section, and then an "Argument" or "Analysis" section…. *All facts relevant to the legal issues and discussion must be set forth in the Facts section.*

Doc. 4, at 3 (emphasis added).

Manchook's failure to include a *Facts* section in her *Brief on the Merits* violates the express language of the Court's Initial Order. *See* Doc. 4, at 3. And Manchook's supplement doesn't absolve Manchook from that requirement, as the Initial Order clearly states. *See id*., at 2. Because Manchook's brief is in violation of the Court's Order, Manchook has forfeited the Court's consideration of the evidence that Manchook relies upon in the *Arguments* section of her brief and in her supplement.

The following discussion of facts is taken from the Commissioner's brief.

In October 2013, Manchook saw neurologist Joshua Sunshine, M.D., for a new patient assessment. Tr. 971. Manchook reported that about nine years before the appointment, she had a brain tumor. Tr. 971. She said that for two years before the appointment, she had intermittent blurred vision in one eye and occasional headaches. Tr. 971. Manchook's exam findings were normal. Tr.

4

972. Dr. Sunshine assessed Manchook with "headache" and "brain mass" and commented that Manchook's headaches might be due to Manchook not sleeping well. Tr. 972. He prescribed medication and told Manchook to follow up in three months. Tr. 972.

In March 2014, Manchook followed up with Dr. Sunshine. Tr. 965. Manchook said that she had headaches two to three times per week. Tr. 965; *see also* Tr. 1081 (January 2014 gastroenterology appointment in which Manchook reported headaches). Manchook's exam findings were normal. Tr. 966. Dr. Sunshine noted that Manchook was being treated for celiac disease and stated, "we'll see if [her headaches] get better as she is being treated for celiac disease." Tr. 966.

In February 2015, a few days before her alleged disability onset date, Manchook saw her gastroenterologist for abdominal pain, with a history of vomiting, gastroesophageal reflux disease, and bloating. Tr. 1087. In the review of symptoms portion of the treatment note, Manchook reported various symptoms, including headaches. Tr. 1089.

In mid-September 2015, Manchook received electro-convulsive therapy for mental health treatment. Tr. 1592. Immediately after her treatment, she reported "some fatigue" and a "mild headache." Tr. 1592. Otherwise, Manchook said that she tolerated the treatment well and wanted to continue therapy. Tr. 1592. Later that month, Manchook went to the emergency room reporting tremors that began three days before her visit. Tr. 1606. She reported that she

had been receiving electro-convulsive therapy and that the tremors "began after that." Tr. 1606. Manchook denied headaches. Tr. 1606. She was discharged and told to follow up with her medical providers. Tr. 1608–09. The next day, Manchook returned to the emergency room for tremors and a headache. Tr. 1626. The provider stated that Manchook's symptoms could be from too much serotonin and be related to her electro-convulsive therapy. Tr. 1629. The provider reduced the dosage of Manchook's antidepressant medication. Tr. 1629.

In early October 2015, Manchook followed up with her primary care doctor. Tr. 1705. At that time, Manchook was attending a partial hospitalization program five days a week and had participated that day. Tr. 1705. The note states that in August 2013, a brain MRI was ordered due to Manchook's reports of "severe headache." Tr. 1705. The 2013 MRI showed no change from a 2011 MRI, other than indicating sinusitis, for which Manchook was prescribed antibiotics. Tr. 1705. Meanwhile, at the October 2015 visit, Manchook denied headaches. Tr. 1706. She was "somewhat" sleepy and had amnesia about a recent meeting. Tr. 1706–06. She was advised to follow up with neurology. Tr. 1706

In late October 2015, Manchook was taken to the emergency room after her mental health provider's office observed that she was "groggy and tired." Tr. 1973. Manchook said that she had started taken a new medication a week before the visit. Tr. 1973. She reported feeling "a little tired" and had a

headache, which she rated a two on a pain scale of ten. Tr. 1973. The provider assessed Manchook with an acute urinary tract infection and stated that Manchook's symptoms could also be caused by medications. Tr. 1986.

In February 2016, Manchook went to the doctor complaining of a migraine for the past three days. Tr. 2659. She also had sinus pressure and a cough. Tr. 2659. The doctor assessed Manchook with acute sinusitis and headache. Tr. 2660. Manchook was prescribed antibiotics and given an antihistamine and a Toradol injection. Tr. 2660.

In December 2016, Manchook saw Dr. Sunshine for a routine follow-up for her brain tumor. Tr. 3524. Manchook reported then-recent episodes of blindness in her right eye and no pain. Tr. 3524. In her review of symptoms, Manchook reported headaches. Tr. 3524. Dr. Sunshine assessed vision loss and ordered bloodwork. Tr. 3526.

In April 2018, Manchook saw Dr. Sunshine for the first time since 2016. Tr. 4743. Manchook requested a brain MRI because she hadn't had one in over a year. Tr. 4743. Her past medical history listed depression and brain tumor. Tr. 4743. Her review of symptoms included headaches. Tr. 4744. Manchook's exam findings were normal and Dr. Sunshine ordered an updated MRI. Tr. 4743–44.

In February 2019, Manchook saw her doctor for a follow-up after a visit to urgent care for an upper respiratory infection, clogged ears, and a headache.

Tr. 6653. Manchook was taking antibiotics and denied headaches at her February appointment. Tr. 6653.

In December 2019, Manchook saw a doctor for arm pain. Tr. 6992. In the review of symptoms, Manchook reported headaches. Tr. 6992.

In February 2020, Manchook had a recheck of her brain tumor and was feeling well. Tr. 7728. Dr. Sunshine wrote that the brain MRI showed no change and that Manchook's "hands [we]re better." Tr. 7728. In the review of symptoms, Manchook reported headaches. Tr. 7729.

In July 2020, Manchook had a mental health counseling appointment and reported that she functioned well despite symptom flare-ups, including headaches. Tr. 7829.

In October 2020, Manchook went to the emergency room for chest discomfort, headache, and nausea. Tr. 7216.

*Hearing testimony*

Manchook, who was represented by counsel, testified at both administrative hearings.

During the first hearing, in July 2017, Manchook described her symptoms, including anxiety. She stated that interacting with others and complying with time constraints caused anxiety. Tr. 544–46. The ALJ commented that Manchook still appeared for appointments, despite her issues, and Manchook stated that "[she]'ll be down for the next two days." Tr. 546. She

described what that meant—she slept a lot and her body hurt. Tr. 546. And she gets headaches.[2] Tr. 546.

During the second hearing, in November 2021, Manchook didn't mention headaches. Tr. 3816–54.

**The ALJ's Decision**

After this Court's remand order, an ALJ issued a new decision and made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: fibromyalgia; affective disorders (mood disorder, depression, bipolar disorder); anxiety disorder; dysfunction of major joints (status post right knee anterior cruciate ligament reconstruction in June 2014); spine disorders (disc bulge at C6/7); and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[2]    The first ALJ denied Manchook's application, but this Court remanded because the ALJ failed to explain his consideration of Manchook's treating physician's medical opinion. *See* Tr. 3867–57; Case No. 1:18-cv-1593, Doc. No. 18 (filed May 9, 2019).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity[3] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently climb ramps/stairs; occasionally climb ladders, ropes, or scaffold; frequently balance, stoop, kneel, crouch, and crawl; frequent exposure to fumes, odors, dusts, gases, and poor ventilation; limited to performing simple, routine tasks; frequent interaction with supervisors, co-workers, and the public; and limited to occasional routine workplace changes.

6. The claimant is capable of performing past relevant work as a small products assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 3767–89.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

---

[3]    A residual functional capacity (RFC) is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the

national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

As explained above, Manchook's brief didn't include a *Facts* section. So all of the evidence that she relies on in the *Argument* section of her brief is in violation of the Court's Initial Order. *See* Doc. 4, at 3 ("All facts relevant to the legal issues and discussion must be set forth in the *Facts* section."). Because Manchook has failed to comply with the Court's Initial Order to set forth in the *Facts* section of her brief the medical evidence that serves as the basis for her headache argument, she has forfeited her headache argument.

Even if the Court considers Manchook's argument, it fails. Manchook alleges that, although she "received consistent treatment for headaches/migraines and discussed this condition at her hearing," the ALJ "never addressed this impairment in the decision." Doc. 7, at 6. Manchook argues that the ALJ's failure to "mention her headaches/migraines was reversible error … because it resulted in a[n] RFC finding that did not enjoy the support of substantial evidence." *Id*.

13

Before considering Manchook's argument, it is necessary to discuss what Manchook doesn't argue.

*Manchook doesn't allege that her headaches are a medically determinable impairment*

At step two, an ALJ must evaluate whether a claimant has a "medically determinable impairment." *See* 20 C.F.R. § 416.921. A *medically determinable impairment* "results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." *Id*. The impairment must also meet the durational requirement—"it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the ALJ finds that the claimant has a *medically determinable impairment*, then the ALJ determines whether that impairment is severe or non-severe. 20 C.F.R. § 416.921. "Once one severe impairment is found, the combined effect of all impairments must be considered [in determining the claimant's residual functional capacity], even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

As for headaches, the Social Security Agency promulgated Social Security Ruling 19-4p to "explain [Agency] policy on how we establish that a person has a[] [*medically determinable impairment*] of a primary headache disorder and how we evaluate primary headache disorders in disability claims." Soc. Sec. Ruling 2019 WL 4169635, at *2 (Aug. 26, 2019). The

14

"regulations further require that the [*medically determinable impairment*] be established by objective medical evidence from an acceptable medical source." *Id*. (footnotes omitted). Moreover:

> We establish a primary headache disorder as a[] [medically determinable impairment] by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source]. We may establish only a primary headache disorder as a[] [medically determinable impairment]. We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as [medically determinable impairments] because secondary headaches are symptoms of another underlying medical condition. We evaluate the underlying medical condition as the [medically determinable impairment]. Generally, successful treatment of the underlying condition will alleviate the secondary headaches.

*Id*. at *5 (footnotes omitted).

In her opening brief, Manchook characterizes her headaches as an "impairment." Doc. 7, at 6, 9. Then she cites in detail the step two requirements for severe and non-severe impairments. *Id*. at 6–7. So one would expect that Manchook is making an argument that the ALJ erred at step two when she didn't list Manchook's headaches as a *medically determinable impairment*. Tr. 3767. Indeed, the Commissioner, in her brief, cites Social Security Ruling 19-4p and argues that the ALJ did not commit reversible error at step two. Doc. 10, at 5–7, 10.

But in her reply brief, Manchook states that "[she] did not argue that she had a primary headache disorder. [Manchook] argued that her

15

headaches/migraines are secondary to her benign brain tumor." Doc. 12, at 2 (citing Doc. 7 at 7). Manchook concedes that, under Social Security Ruling 19-4p, the Agency "will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as [*medically determinable impairments*] because secondary headaches are symptoms of another underlying medical condition." Doc. 12, at 2. Manchook's assertion in her reply brief eviscerates any argument that one could construe in Manchook's opening brief about any alleged error at step two. It also eliminates the possibility that Manchook is making a different, albeit unidentified, argument challenging the ALJ's identification of Manchook's impairments.

Next, in her reply brief, Manchook attempts to change her argument. In her opening brief, Manchook's assignment of error was this:

> Whether the ALJ's RFC finding is supported by substantial evidence in the absence of any mention of Plaintiff's headaches/migraines.

Doc. 7, at 5. In her reply, Manchook lists her assignment of error as this:

> The ALJ's RFC finding is not supported by substantial evidence in the absence of any discussion regarding Plaintiff's headaches/migraines or benign brain tumor.

Doc. 12, at 1. Manchook's attempt to raise a new argument about her benign brain tumor in her reply brief fails. *See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived"). While Manchook in her opening brief mentioned her benign brain tumor—in addition to anxiety and panic attacks, sleep apnea, tachycardia, and

16

electroconvulsive therapy treatment for mental health, Doc. 7, at 8—Manchook did not allege an error linked to her benign brain tumor.[4] So I will consider the only argument that Manchook presented—the ALJ's RFC finding isn't supported by substantial evidence "in the absence of any mention" of Manchook's headaches. Doc. 7, at 5.

> *The ALJ considered Manchook's medically determinable impairment of anxiety and its symptom, headaches*

The ALJ mentioned Manchook's headaches when she noted that Manchook told the consultative examiner that her anxiety caused headaches. Tr. 3777. This is consistent with Manchook's testimony at the 2017 hearing, when Manchook stated that her anxiety caused headaches. Tr. 546; *see also* Tr. 2879 (Manchook identifying headaches as a symptom of her mental health condition). The ALJ spent 25 pages detailing the evidence, Tr. 3772–96, contained in a record over 8,000 pages long. The ALJ concluded that Manchook's anxiety improved and was controlled with medication and that Manchook's symptoms were not as severe as alleged. Tr. 3775, 3777–78, 3780–81, 3784, 3786–91. Manchook doesn't challenge any of those factual findings or legal conclusions. Because the ALJ evaluated Manchook's anxiety—the underling *medically determinable impairment* that caused Manchook's headaches—and found that it improved with treatment and wasn't as severe as alleged, the ALJ did not err and her decision is supported by substantial

---

[4]    At the 2017 hearing, Manchook agreed that her benign brain tumor was asymptomatic. Tr. 556–57.

evidence. *See* Soc. Sec. Ruling 2019 WL 4169635, at *5 ("We evaluate the underlying medical condition as the [*medically determinable impairment*]. Generally, successful treatment of the underlying condition will alleviate the secondary headaches."); *see also Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *11 (S.D. Ohio Mar. 16, 2021) (finding that the ALJ accommodated the plaintiff's headaches when the record showed that the headaches were from neck pain and the ALJ "thoroughly discussed Plaintiff's neck pain and specifically accommodated for her neck impairment in the RFC"), *report and recommendation adopted*, 2021 WL 1516173 (S.D. Ohio Apr. 16, 2021); *Stewart v. Comm'r of Soc. Sec.*, No. 2:17-cv-706, 2018 WL 1980254, at *4 (S.D. Ohio Apr. 27, 2018) ("By accommodating plaintiff's neck pain, the ALJ also accommodated the alleged cause of plaintiff's headaches.").

As noted, Manchook doesn't challenge the ALJ's evaluation of her anxiety. Rather, Manchook cites evidence in the record that she believes supports her argument that the ALJ didn't "acknowledge the existence of her headaches/migraines and accompanying treatment[]." Doc. 7, at 7–9. Even if the Court considers Manchook's cited evidence in the *Argument* section of her brief and her supplement which are in violation of the Court's Initial Order, Manchook's argument still fails. This is so because Manchook hasn't show that the ALJ's decision was unsupported by substantial evidence. *See Jones*, 336 F.3d at 477 (even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ").

First, Manchook's string-cite to 37 pages of the transcript, Doc. 7, at 7, Doc. 7-1, at 2, is not an appropriate way to present evidence.[5] *See Williams v. Comm'r of Soc. Sec.*, No. 3:18-cv-324, 2019 WL 1146712, at *18 (N.D. Ohio Mar. 13, 2019) ("Other than string citing pages of the transcript she believes shows her severe symptoms … [the plaintiff] does not challenge the ALJ's findings and has waived any purported specific challenge to the ALJ's findings regarding her mental impairments") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal citations omitted)).

---

[5]    Also, Manchook's string citations aren't accurate. For instance, Manchook alleges that all 37 pages show that "Plaintiff received consistent treatment from her primary care physician Dr. Haas and her neurologist Dr. Sunshine for headaches that were thought to be related to a benign brain tumor." Doc. 7, at 7. A sampling of the pages belies Manchook's assertion. Transcript page 1705 shows that in 2013, two years before her alleged disability onset date, Manchook had a brain MRI that confirmed her brain mass was unchanged from 2011, but showed sinusitis, for which Manchook was given an antibiotic. Tr. 1705. Transcript pages 4747 and 4748 show that Manchook had a sleep study done for her complaints of sleepiness, fatigue, teeth grinding, heartburn, snoring, and morning headaches, and was diagnosed with severe obstructive sleep apnea and tachycardia. Tr. 4747–48. Transcript 7829 is a counseling record and says nothing about headache treatment, Manchook's physicians, or a brain tumor. Tr. 7829.

Second, the treatment records that Manchook improperly describes for the first time in the *Argument* section of her brief don't support her argument because many of them show that Manchook's headaches were caused by medical problems that were temporary or treated with apparent resolution.[6] For instance, Manchook states that she "told Dr. Sunshine that she was experiencing intermittent blurred vision with her headaches. Dr. Sunshine prescribed Pamelor." Doc. 7, at 7–8 (citing Tr. 971–92). That was in October 2013, about a year-and-a-half before Manchook's alleged disability onset date. Tr. 971. The treatment note shows that Manchook complained of "intermittent blurred vision of the left eye [and] occasional headaches." Tr. 971. Dr. Sunshine stated that Manchook's headaches may be secondary to not sleeping well and suggested a possible sleep study. Tr. 972. A 2017 sleep study showed that

---

[6]     Manchook argues that the ALJ's failure to address "this impairment" of headaches/migraines "frustrates judicial review because only by undertaking de novo review of the medical evidence (guided by the post hoc rationalizations supplied by counsel) can it be determined whether additional limitations were proper." Doc. 7, at 9 (citing *Forehope v. Comm'r of Soc. Sec.*, 2014 WL 1155360, at *3 (N.D. Ohio Mar. 21, 2014)). First, Manchook concedes that her headaches were not a *medically determinable impairment*, but a symptom of an impairment. Second, *Forehope* is not on point, because in that case the plaintiff alleged that the ALJ erred at step two by not finding two conditions to be medical impairments and not mentioning the impairments in the decision. 2014 WL 1155360, at *3. But here, Manchook doesn't argue an error at step two and the ALJ mentioned Manchook's headaches and evaluated the underlying impairment, anxiety. And the court in *Forehope* evaluated the evidence the plaintiff identified, *id.*, so Manchook's suggestion that any judicial evaluation is impermissible post hoc review, *see* Doc. 7, at 9; Doc. 12, at 1, is not well-taken.

Manchook had severe sleep apnea and a CPAP machine was recommended for treatment. Tr. 4747–48.

The fact that Manchook reported a "mild headache" after her electro-convulsive therapy, Doc. 7, at 8, only shows that Manchook's therapy caused a headache. Tr. 1592. While true that Dr. Sunshine continued Manchook's medication for headaches a year before Manchook's alleged disability onset date, Doc. 7, at 8, at that visit Dr. Sunshine wrote, "We'll see if [Manchook's headache] gets better as she is being treated for celiac disease." Tr. 966. And Manchook misreads an October 2015 treatment note from a follow-up visit with her primary care physician, Dr. Haas. Tr. 1705. Manchook cites that treatment note and states, "On October 1, 2015, Dr. Haas referred Plaintiff to neurosurgery following a recent hospitalization for migraines." Doc. 7, at 8. But the then-recent hospitalization was for syncope (loss of consciousness) and amnesia, not a migraine. Tr. 1705. The reference in the treatment note to a "severe headache" was a reproduction of a note of a brain MRI from August 2013, which showed no change from Manchook's 2011 MRI other than sinusitis, for which Manchook was treated with antibiotics. Tr. 1705. In fact, at that October 1, 2015 visit with Dr. Haas, Manchook denied headaches. Tr. 1706.

And while true that Dr. Haas diagnosed Manchook with a non-intractable episodic headache in February 2019, Doc. 7, at 8, that was after Manchook was treated for an upper-respiratory infection—Manchook had

21

initially complained that she had a headache and her ear felt clogged. Tr. 6653. But after being treated with antibiotics for her infection, Manchook denied headaches and was given a decongestant for her continued ear pain. Tr. 6653–54. These records don't show that Manchook "received consistent treatment for headaches/migraines," Doc. 7, at 6, but rather that Manchook received treatment for infections and that her neurologist believed that Manchook's reports of headaches were caused by other conditions for which she received treatment.

Finally, Manchook's reliance upon the "Review of Symptoms" portion of various treatment notes indicating that Manchook reported headaches, Doc. 7, at 8, is unavailing. The fact that Manchook reported headaches is not evidence that she sought treatment for them during the relevant period or reported that they caused disabling symptoms. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 5:21-cv-1721, 2022 WL 2612113, at *15 (N.D. Ohio Apr. 14, 2022) (finding that the ALJ didn't err by not discussing the plaintiff's headaches; "Although Johnson cites treatment notes in which she endorsed headaches …, she does not cite evidence that she sought treatment for them and she did not report that they caused any disabling symptoms at the hearing or in her disability paperwork or function report"), *report and recommendation adopted*, 2022 WL 2712174 (N.D. Ohio July 13, 2022). Manchook herself only vaguely alleges that "these symptoms would contribute to [Manchook] being off-task at work or absent altogether from the workplace[.]" Doc. 7, at 9. But the ALJ rejected the

22

opinion evidence describing off-task behavior and absenteeism caused by anxiety and other mental health reasons, Tr. 3783, 3785, 3789, a finding that Manchook doesn't challenge.

In sum, the ALJ recognized that Manchook had headaches that were caused by anxiety and the ALJ evaluated Manchook's anxiety. That was proper. *See* Soc. Sec. Ruling 2019 WL 4169635, at *5; *Smith*, No. 2:20-cv-1511, 2021 WL 972444, at *11; *Stewart*, No. 2:17-cv-706, 2018 WL 1980254, at *4. Indeed, Manchook concedes that her anxiety caused headaches. Doc. 7, at 8 n.1; *see also* Tr. 546 (Manchook's testimony), Tr. 1711 (Manchook stating that her anxiety causes headaches), 7829 (Manchook reporting that a panic attack made her headache worse). And while Manchook alleges that the ALJ committed an error, she hasn't identified what, specifically, that error is, and relevant legal authority, cited above, is not in her favor. Manchook hasn't challenged any of the ALJ's factual findings and hasn't developed her allegation that the ALJ's RFC is unsupported by substantial evidence. So the ALJ's decision should be affirmed. *See Jones*, 336 F.3d at 477.

## Conclusion

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.

Dated: September 27, 2023

 */s/ James E. Grimes Jr.* 
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).